UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD OSTIPOW, et al.,

        Plaintiffs,

vs.

        Case No. 16-cv-13062
        Hon. Mark A. Goldsmith

WILLIAM FEDERSPIEL, et al.,

        Defendants.

_____/

**OPINION & ORDER
(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 97); and (2) DENYING PLAINTIFFS' MOTION FOR ORDER TO NAME KELLY SUPPES AS DEPUTY DOE NO. 1 (Dkt. 98)**

This matter is currently before the Court on Defendants Sheriff William Federspiel and Saginaw County – Office of Sheriff's motion for summary judgment (Dkt. 97) and Plaintiffs Gerald and Royetta Ostipow's motion for an order to name Kelly Suppes as Deputy Doe No. 1 (Dkt. 98). Because oral argument will not aid the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' federal claims and, therefore, dismisses those claims with prejudice. Because the dismissal of these federal claims means that this case no longer retains a federal character, the Court dismisses Plaintiffs' state-law claims without prejudice and denies those portions of Defendants' motions challenging the state-law claims against Defendant Federspiel without prejudice. The Court also denies Plaintiffs' motion for an order to name Kelly Suppes as Deputy Doe No. 1.

**I.    BACKGROUND**

1

This case stems from the 2008 execution of search warrants on Plaintiff Gerald Ostipow's properties. On April 25, 2008, Saginaw County Sheriff's Deputies searched Gerald Ostipow's properties – 3551 and 3996 E. Allan Road in Owosso, Michigan – and discovered a large indoor marijuana growing operation at 3551 E. Allan Road. Defendants' Statement of Material Facts ("SMF") ¶¶ 1-2 (Dkt. 97). Gerald Ostipow and his wife, Plaintiff Royetta Ostipow, did not reside at 3551 E. Allan Road, but their son, Steven Ostipow, did. Id. ¶ 1. Steven Ostipow was later charged with, and pleaded guilty to, manufacturing and possessing marijuana, in addition to other crimes. Id. ¶ 4. Plaintiffs deny any knowledge of their son's activities. Id.

In executing the search warrants, deputies seized paraphernalia, marijuana growing equipment, a snow mobile, a motor vehicle, U.S. currency, and firearms. Id. ¶ 3. The Saginaw County Prosecutor initiated forfeiture proceedings on June 13, 2008, for the real and personal property located at 3551 E. Allan Road and for the personal property located at 3996 E. Allan Road. Id. ¶ 8. Plaintiffs filed an answer in the forfeiture proceedings, alleging that they were third-party innocent owners and had no knowledge of any illegal activity. Id. ¶ 9.

On January 13, 2009, the circuit court granted summary disposition in favor of the county and entered an order of forfeiture, ordering that "all of the right, title and interest of the claimants in the above described real and personal property is FORFEITED to the Saginaw County Sheriff's Department and shall be disposed of by said Department as provided by statute, MCL 333.7524." See Order Granting Motion for Summary Disposition and Order of Forfeiture, Ex. I to Defs. Mot. (Dkt. 97-10). Plaintiffs filed a claim of appeal, and motion for bond and stay of proceeding, for which a hearing was conducted on May 26, 2009. SMF ¶ 11. At the hearing, Plaintiffs' counsel requested a stay contingent upon the posting of a bond, and the trial court authorized a bond in the amount of $150,000. Id. ¶ 12; see also 5/26/2009 Tr., Ex. J to Defs. Mot., at 14-15, PageID.2389-

2

2390 (Dkt. 97-11). The court confirmed that the stay would not go into place until the bond was filed. 5/26/2009 Tr. at 15, PageID.2390. Plaintiffs did not post a bond, but did ask the Michigan Court of Appeals to review the bond conditions. SMF ¶ 13. The Court of Appeals denied this request on June 4, 2009. Id.

In May 2009, Sheriff's deputies secured the structures at 3551 E. Allan Road and proceeded to remove Plaintiffs' personal property. Id. ¶ 16. The Saginaw County Purchasing Manager, Kelly Suppes, listed and sold the real property at 3551 E. Allan Road through an independent realtor and sold the personal property on Ebay. Id. ¶ 17. The sales were consummated in 2009. Id.

On January 11, 2011, the Michigan Court of Appeals determined that Plaintiffs' affirmative defenses raised material issues of fact such that the circuit court's grant of summary disposition was inappropriate. See In re Forfeiture of a Quantity of Marijuana, 805 N.W.2d 217 (Mich. Ct. App. 2011). The court of appeals reversed the trial court's decision and remanded for further proceedings. Id.

The case went to trial on March 20, 2012. SMF ¶ 21. The circuit court determined that Plaintiffs were not innocent owners; following another appeal, the court of appeals held that Royetta Ostipow, but not Gerald, was an innocent owner. Id. ¶¶ 21-23; see also In re Forfeiture of Marijuana, No. 310106, 2013 WL 5731508 (Mich. Ct. App. Oct. 22, 2013). On August 2, 2016, the circuit court entered a final judgment describing which of the real and personal property was and was not forfeited. SMF ¶ 24.

On August 3, 2016, Plaintiffs made a written demand on Sheriff Federspiel for the return of the real and personal property which was previously seized and sold. Id. ¶ 26. Plaintiffs allege

3

that Defendants have neither returned the property nor compensated them for the value of their non-forfeited property. Pls. Resp. at 11, PageID.5109 (Dkt. 118).

Plaintiffs then filed the instant lawsuit on August 24, 2016. Plaintiffs allege claims for (i) trover/conversion, (ii) substantive due process violations pursuant to 42 U.S.C. § 1983, (iii) procedural due process violations pursuant to 42 U.S.C. § 1983, (iv) violation of the Fifth Amendment pursuant to 42 U.S.C. § 1983, (v) excessive fines in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983, (vi) a Monell claim, and (vii) violation of the Michigan Freedom of Information Act. Defendants now move for summary judgment, while Plaintiffs seek to name Kelly Suppes as a defendant.

## II.     STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the

4

"mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III.  ANALYSIS

Defendants put forth several reasons why Plaintiffs' claims should be dismissed; generally, these are (i) that the Sheriff's Office and the Deputy Does are improper defendants, (ii) that the claims fail on the merits, and (iii) that the statute of limitations has run on Plaintiffs' claims. Because the Court finds that Plaintiffs' claims cannot succeed on the merits, the issues regarding the statute of limitations need not be addressed.

**A.  Whether the Sheriff's Office and Deputy Doe No. 1 are Proper Defendants**

**i.  Defendant Saginaw County – Office of Sheriff**

Defendants argue that the Saginaw County – Office of Sheriff is not a separate legal entity subject to suit. Plaintiffs respond that the "Office of Sheriff" is a formal office, not just an individual constitutional officer, and cites several cases that they claim contradict Defendants' position. They note that the circuit court's order in 2009 forfeited their property to the "Saginaw County Sheriff's Department." Pls. Resp. at 14, PageID.5112 (citing Order Granting Mot. for Summ. Disp. and Order of Forfeiture, Ex. D to Pls. Resp. (Dkt. 118-5)).

Defendants' authorities are persuasive. In Hughson v. County of Antrim, 707 F. Supp. 304, 306 (W.D. Mich. 1988), the court explained that "Michigan is a jurisdiction in which the sheriff and prosecutor are constitutional officers, and there does not exist a sheriff's department or a prosecutor's office. Instead, the sheriff and the prosecutor are individuals, elected in accordance with constitutional mandates. Mich. Const. Art. 7, § 4. Since the sheriff's department and the

5

prosecutor's office do not exist, they obviously cannot be sued." Other courts have found similarly, noting that the Sheriff's Office is simply an agent of the county. See, e.g., Dayson v. Rondeau, No. 12-1310, 2013 WL 1818628, at *8 n.2 (W.D. Mich. Apr. 29, 2013) ("The drug enforcement team is alleged to be a task force of the Cass County Sheriff's Department, which does not exist as a separate legal entity. The drug enforcement team, like the Cass County Sheriff's Department, is simply an agent of the county."); Veliz v. Bouchard, No. 05-60039, 2008 WL 719251, at *1 (E.D. Mich. Mar. 14, 2008) ("Finally, the claim against the Oakland County Sheriff's Department shall be dismissed, as under Michigan law the Sheriff's Department is not a separate legal entity from Oakland County, and therefore not subject to suit.").

The cases relied upon by Plaintiffs do not contradict Defendants' authorities. Rather, they seem consistent with the analysis in Hughson. See, e.g., Brownstown Twp. v. Wayne Cty., 242 N.W.2d 538, 539 (Mich. Ct. App. 1976) ("The state has constitutionally delegated the duty of law enforcement to the county by providing for the office of sheriff."); Mich. Labor Mediation Bd. v. Marr, 181 N.W.2d 44, 46 (Mich. Ct. App. 1970) ("The office of a sheriff is a constitutional office.").

Accordingly, Defendant Saginaw County – Office of Sheriff is dismissed.

### ii. Deputy Doe/Kelly Suppes

In addition to Federspiel and the Saginaw County Sheriff's Office, Plaintiffs named "Deputy Does 1-10" as defendants in their complaint. Defendants seek to have these Doe defendants dismissed. Plaintiffs agree to the dismissal of Does two through ten, but now ask that this Court "deem the appearing 'Deputy Does No. 1' as Kelly Suppes for the remainder of this case or alternately extend the time for service of Kelly Suppes as Deputy Doe No. 1 for an appropriate period." Pl. Mot. for Order to Name Kelly Suppes as Deputy Doe No. 1 at 10, PageID.2558 (Dkt. 98).

The Court declines to grant Plaintiffs' request. Kelly Suppes is the Saginaw County purchasing and risk manager, who is alleged to have sold Plaintiffs' property in 2009. It would be futile to name her as a defendant in the instant case when any claims alleged against her would fail for the reasons that the claims against Defendant Federspiel fail, as explained infra.

Accordingly, Plaintiffs' motion to name Kelly Suppes as Deputy Doe No. 1 is denied, and the Deputy Doe Defendants are dismissed.

### B. Plaintiffs' Claims

Plaintiffs' federal claims are brought pursuant to 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must prove that "(1) the defendant was a person acting under the color of state law, and (2) the defendant deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." Fridley v. Horrighs, 291 F.3d 867, 871-872 (6th Cir. 2002). Here, there is no dispute that Federspiel was acting under the color of state law. The Court must, therefore, determine whether Federspiel deprived Plaintiffs of a constitutional right.

Federspiel asserts the defense of qualified immunity. Once a defendant raises a qualified immunity defense, the plaintiff bears the burden of demonstrating that it does not apply. Rodriguez v. Passinault, 637 F.3d 675, 689 (6th Cir. 2011). In order to defeat a defense of qualified immunity, the plaintiff must satisfy the following two-part test: (i) first, that the defendant violated a constitutional right, and (ii) the right at issue was "clearly established" at the time of the misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)). While the Court in Saucier mandated that the two steps be addressed in order, the Court in Pearson held that courts have discretion regarding which step to address first. Id. at 236.

### i. Count Two – Substantive Due Process

7

Plaintiffs argue that Federspiel violated their substantive due process rights by failing to return the property that the trial court deemed non-forfeited. Plaintiffs stress that the wrong that they are alleging is not the original sale of the property in 2009; the sale of their property in 2009 was pursuant to a then-valid court order.[1] Rather, it is Federspiel's failure to return their non-forfeited real and personal property once the trial court issued its order in 2016 that Plaintiffs maintain "should and does shock the conscience of the federal court[.]" Compl. ¶ 53 (Dkt. 1); see also Pls. Resp. at 17, PageID.5115; 20-21, PageID.5118-5119; 25, PageID.5123.

"To support a viable substantive due process claim against executive action, a plaintiff must ordinarily demonstrate an 'abuse of power . . . [that] shocks the conscience.'" Partin v. Davis, 675 F. App'x 575, 581 (6th Cir. 2017) (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). "[T]his characterization applies to 'only the most egregious official conduct,' conduct that is 'so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency.'" Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 547-548 (6th Cir. 2012) (quoting Breithaupt v. Abram, 352 U.S. 432, 435 (1957)) (internal citations and quotations omitted) (alteration in original).

Federspiel's conduct does not shock the conscience. He followed a valid court order, which provided that Plaintiffs' property was forfeited "to the Saginaw County Sheriff's Department and shall be disposed of by said Department as provided by statute, MCL 333.7524." Order Granting Mot. for Summ. Disp. and Order of Forfeiture. His failure to return Plaintiffs'

---

[1] Plaintiffs repeatedly argue, however, that the judgment Defendants rely upon "is a nullity in the eyes of Michigan law," Pls. Resp. at 17, PageID.5115, and that "everything a party did on reliance of a reversed judgment must be deemed (and is) undone," id. at 21, PageID.5119. It is unclear what Plaintiffs believe the significance of this argument to be. Federspiel was entitled to rely on the then-valid court order in 2009, and he does not now argue that the 2009 order entitles him to certain property that has since been deemed non-forfeited.

property seven years later – after a second trial court proceeding following a second remand from the Michigan Court of Appeals – is hardly surprising, let alone shocking to the conscience, as the property (or much of it) was apparently sold long before.

Michigan law provides a remedy for those in Plaintiffs' position – property owners who lose initially at the trial court level, but win vindication of their property rights in later proceedings. If the property is still in the hands of government officials, a court may order that it be returned; if not, the proceeds from the sale may be ordered to be paid to the claimants. See In re Forfeiture of $256 and One 1978 Oldsmobile, 517 N.W.2d 732, 734 (Mich. 1994) ("[T]he prior disposition of the assets will not bar entry of an order directing the plaintiff to return the assets or the proceeds from the disposition of the assets."). Plaintiffs secured such remedies in their state proceedings. The Michigan Court of Appeals ordered that Royetta Ostipow receive the value of her dower interest in 3551 E. Allan Road, while the seizure and subsequent auction of the property "should remain valid transfers." In re Forfeiture of Marijuana, 2013 WL 5731508, at *4 n.2. On remand, the trial court declared what property was forfeited and what was not. See Final Judgment, Ex. R to Defs. Mot. (Dkt. 97-19).

If Plaintiffs believe there are deficiencies with the remedies ordered by the state courts, it is hard to understand why that amounts to a constitutional violation by Federspiel. He has not violated or ignored a court order. Nothing that Federspiel did or failed to do is "so brutal and offensive that it does not comport with traditional ideas of fair play and decency." Handy-Clay, 695 F.3d at 547-548. Accordingly, there is no Constitutional violation.

Even if Federspiel's conduct could be said to "shock the conscience," the Court would nonetheless conclude that he is entitled to qualified immunity on the substantive due process claim. Plaintiffs do not point to any case that clearly establishes that it is a violation of an individual's

9

substantive due process rights for an officer who seized property pursuant to a valid court order to fail to return that property following a reversal of said order. Plaintiffs do cite to Nelson v. Colorado, 137 S. Ct. 1249 (2017), but there the Supreme Court held that Colorado's Exoneration Act violated procedural due process because it required a plaintiff who was not convicted of a crime to affirmatively prove her innocence to recover funds she paid as costs, fees, and restitution during her criminal proceedings. It does not establish that a failure to compensate an individual for property that was previously deemed forfeited amounts to a substantive due process violation.

Federspiel is entitled to summary judgment on this claim.

### ii. Count Three – Procedural Due Process

Plaintiffs argue that their procedural due process rights were violated because they were required to post a bond to prevent the forfeiture of their own property before a final, non-appealable determination of forfeitability was obtained. Pls. Resp. at 25-27, PageID.5123-5125. The Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., Am. XIV. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." Warren v. City of Athens, Ohio, 411 F.3d 697, 708 (6th Cir. 2005).

Plaintiffs cite to In re Forfeiture of 2000 GMC Denali, 892 N.W.2d 388 (Mich. Ct. App. 2016), arguing that Michigan courts have concluded that the payment of a bond as a condition to access the courts is unconstitutional. In Denali, the claimant could not afford to post the bond required to contest the forfeiture in the trial court. The Michigan Court of Appeals held that "Michigan's bond requirement effectively denied claimant the opportunity to be heard," as, once an individual's property is seized, "the sole remedy available to a claimant is a judicial determination that the seized property was not, in fact, subject to forfeiture, which can only be

10

sought by posting the statutorily required bond." 892 N.W.2d at 398. The court concluded that certain provisions of the forfeiture statute, Mich. Comp. Laws § 333.7523(1)(c) and (d), were unconstitutional as applied to the claimant. Id. at 400.

Here, in contrast, Plaintiffs were able to access the courts to challenge the forfeiture of their property. They were given notice and an opportunity to be heard, which they took by filing an answer challenging the forfeiture in the trial court. They were also able to appeal without posting a bond – the only bond requirement was to stay the proceedings pending appeal. Plaintiffs offer no authority for concluding that such a requirement violates procedural due process. Indeed, such a holding would be puzzling, given that Michigan, like all other states, generally requires a judgment debtor to post a bond or other security to forestall collection on a judgment against it while it appeals. See Mich. Ct. R. 7.209.

Additionally, Plaintiffs do not explain why Federspiel should be held liable for the trial court's imposition of a bond requirement. As Federspiel points out, Plaintiffs' own counsel suggested a bond, Def. Ex. J. at 11, PageID.2386; even if he had not, Plaintiffs offer no explanation as to why Federspiel is responsible for the actions of the court.

Summary judgment is granted on the procedural due process claim.

### iii. Count Four – Takings Clause

Plaintiffs' fourth claim alleges that Federspiel violated the Takings Clause of the Fifth Amendment by selling Plaintiffs' real and personal property "before a final, non-appealable determination was rendered," without providing Plaintiffs with just compensation. Compl. ¶ 63. The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const., Am. V.

The Sixth Circuit has distinguished between government takings for public use, which are civil in nature, and the forfeiture of property under the government's police power, which is

11

criminal in nature. United States v. Droganes, 728 F.3d 580, 591 (6th Cir. 2013). The latter is not subject to the Fifth Amendment "because the government's seizure and retention of property under its police power does not constitute a public use." Id. (quoting Innovair Aviation Ltd. v. U.S., 632 F.3d 1336, 1341 (Fed. Cir. 2011)) (quotations and alterations omitted); see also Ross v. Duggan, 402 F.3d 575, 582 (6th Cir. 2004) ("[T]he Fifth Amendment Takings Clause has no application when title to property was transferred to the state via a valid civil forfeiture proceeding, rather than by eminent domain.") (citing Bennis v. Michigan , 516 U.S. 442, 452-453 (1996)). Because the seizure of Plaintiffs' property was performed pursuant to the government's police power, it is not a taking for public use and not subject to the Fifth Amendment.

However, Defendants also raise another issue – whether this claim is ripe for the Court's review. Defendants argue that it is not, because a takings claim is not ripe until (1) the decision-making body has come to a final decision, and (2) the plaintiff has sought compensation through the procedures the state has provided for doing so. DLX Inc. v. Kentucky, 381 F.3d 511, 518 (6th Cir. 2004) (citing Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186-191 (1985)).

Plaintiffs had originally stated that they were willing to concede that the claim was not yet ripe, if the Court would dismiss it without prejudice so that they could later raise the claim in state court. Pls. Resp. at PageID.5125; see also Pl. Mot. to dismiss solely Count IV without prejudice (Dkt. 111). However, Plaintiffs subsequently withdrew their motion to dismiss, arguing that the claim is ripe even without exhaustion of state-court remedies. See Pl. Notice of Withdrawal (Dkt. 123). Plaintiffs point to the Supreme Court's issuance of a writ of certiorari in Knick v. Township of Scott, No. 17-647, 138 S. Ct. 1262 (Mar. 5, 2018), which raises the question of whether the Supreme Court should reconsider the Williamson County requirements; they also point to a recent

Fifth Circuit decision in Archbold-Garret v. City of New Orleans, __ F.3d __, 2018 WL 3096680 (5th Cir. 2018), where the appellate court found that the trial court erred in dismissing a takings claim as unripe. These authorities are marshaled by Plaintiffs to support their argument that the Williamson County requirements are not jurisdictional.

The Sixth Circuit has acknowledged that the Williamson County test "is not strictly jurisdictional but only 'prudential,' and need not be followed 'when its application would not accord with sound process.'" Wayside Church v. Van Buren Cty., 847 F.3d 812, 818 (6th Cir. 2017) (quoting Miles Christi Religious Order v. Twp. of Northville, 629 F.3d 533, 541 (6th Cir. 2010)). Here, the Court finds that it would not accord with sound process to require Plaintiffs to ask a state decision-making body to adjudicate their claim before allowing them to assert the claim in federal court. Regardless of the outcome reached by the state entity, Plaintiffs will not have a Fifth Amendment takings claim because, as explained supra, the forfeiture of property under the government's police power is not subject to the Fifth Amendment's taking provision.

Federspiel is entitled to summary judgment on this claim.

### iv. Count Five – Excessive Fines

Gerald Ostipow next argues that Defendants violated the Eighth Amendment by imposing an excessive fine "in the form of the value of the forfeiture of [his] interest in [3551 E. Allan Road] and its contents[.]" Compl. ¶ 67. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., Am. VIII.

Defendants argue that the prohibition against excessive fines has never been applied to the states through the Fourteenth Amendment, citing McDonald v. City of Chicago, 561 U.S. 742, 765 n.13 (2013). There, the Supreme Court stated, "[w]e have never decided whether the Third Amendment or the Eighth Amendment's prohibition of excessive fines applies to the States

13

through the Due Process Clause." Plaintiffs respond that the Supreme Court in <u>Cooper Industries, Inc. v. Leatherman Group</u>, 532 U.S. 424, 433-434 (2001), stated, "[t]he Due Process Clause of the Fourteenth Amendment . . . makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the states."

Given the Supreme Court's statement in <u>McDonald</u>, the Court finds that the law is not "clearly established" as to whether a forfeiture to the state may constitute an excessive fine in violation of the Eighth Amendment. As such, Federspiel is entitled to qualified immunity on this claim.

Even if the Eighth Amendment were applicable to the States, Federspiel would still be entitled to summary judgment, as he did not violate the Eighth Amendment. "[A] modern statutory forfeiture is a 'fine' for Eighth Amendment purposes if it constitutes punishment even in part, regardless of whether the proceeding is styled <u>in rem</u> or <u>in</u> personam." <u>United States v. Bajakajian</u>, 524 U.S. 321, 331 n.6 (1998).[2] "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." <u>Id.</u> at 334.

---

[2] The parties do not discuss whether the forfeiture provisions at issue here are punitive (even in part), but impliedly agree that they are, as they both rely on the test for punitive forfeitures set forth in <u>Bajakajian</u>. <u>See</u> Pls. Resp. at 28, PageID.5126; Defs. Mot. at 25-26, PageID.2263-2264. For purposes of deciding this issue, the Court will assume that the parties are correct. In <u>Austin v. United States</u>, 509 U.S. 602, 619, 622 (1993), the Supreme Court found that an <u>in rem</u> forfeiture under modern forfeiture provisions, 21 U.S.C. §§ 881(a)(4) and (a)(7), constituted "payment to a sovereign as punishment for some offense," noting that the statutes "expressly provide an 'innocent owner' defense," which exemptions "serve to focus the provisions on the culpability of the owner in a way that makes them look more like punishment, not less." The Court also noted that "Congress has chosen to tie forfeiture directly to the commission of drug offenses." <u>Id.</u> at 620.

The forfeiture provision at issue here, Mich. Comp. Laws § 333.7521, similarly provides an innocent owner defense, <u>id.</u> at (1)(f) ("[A] thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner's knowledge or consent."), and ties the forfeitures to the commission of drug offenses, <u>see id.</u> (providing for forfeiture of "[a]ny thing of value that

14

Plaintiffs argue that a forfeiture against Gerald Ostipow in excess of $360,000 – the value of 3551 E. Allan Road and its contents[3] – is grossly disproportional to the gravity of his offense. They point out that in Bajakajian, the Court found that a forfeiture of $357,144.00 would violate the Excessive Fines Clause, and there, an underlying criminal conviction was present. Pls. Resp. at 29, PageID.5127. Here, Plaintiffs contend, the amount forfeited was greater than in Bajakajian, and Gerald Ostipow lacks an underlying criminal conviction; therefore, the forfeiture violates the Excessive Fines Clause.

The Court disagrees. In Bajakajian, the respondent pled guilty to failing to report that he was transporting more than $10,000 outside the United States, and the Government sought forfeiture of the entire $357,144 in cash that he was carrying   524 U.S. at 325. The Court found that this was excessive, stressing that the "[r]espondent's crime was solely a reporting offense. It was permissible to transport the currency out of the country so long as he reported it." 524 U.S. at 337. The Court observed that under the Sentencing Guidelines, the maximum sentence that could have been imposed on the respondent was six months, and the maximum fine was $5,000. Id. at 338. "The harm that respondent caused was also minimal." Id. at 339.

In the instant case, the underlying offense was much more serious. Sheriff's deputies recovered 213 marijuana plants and fifteen pounds of processed marijuana from 3551 E. Allan Road, and also seized narcotics, narcotics paraphernalia, and equipment used to grow marijuana.

---

is furnished or intended to be furnished in exchange for a controlled substance"); id. at (1)(c) (providing for forfeiture of property that is used or intended for use as a container for controlled substances or for materials, products, or equipment used in manufacturing, compounding, processing, delivering, importing, or exporting a controlled substance).

[3] Plaintiffs' estimation of $360,000 is supported by Gerald Ostipow's affidavit, where he states that he "estimate[s] that the Saginaw County Sheriff's Office caused the forfeiture of over or losses in the amount of $360,000.00 to my Farmhouse property and its contents." Gerald Ostipow Aff., Ex. T to Pls. Resp., ¶ 5 (Dkt. 118-21).

Butcher Aff., Ex. A to Defs. Mot., ¶¶ 5, 6 (Dkt. 97-2). Steven Ostipow pled guilty to manufacturing marijuana, 21 U.S.C. § 841(a)(1), and felon in possession of a firearm, 18 U.S.C. § 922(g)(1). See Plea Agreement, United States v. Ostipow, No. 08-20453 (E.D. Mich. July 17, 2009), ECF No. 27. These crimes carry potential sentences of five to forty years and up to ten years, respectively; they also carry potential fines of $2 million and $250,000, respectively. See id. Steven Ostipow's large-scale marijuana growing operation was a more serious crime than a mere "reporting offense," and caused (or had the potential to cause) a great deal of harm to others.

The trial court found, and the appellate court agreed, that "Gerald was aware that the residence was being used for illegal activity and wanted to avoid exposing the interior of the residence to himself or law enforcement." In re Forfeiture of Marijuana, 2013 WL 5731508, at *4. The appellate court reasoned that "[e]ven if Gerald did not have actual knowledge that the residence was specifically used for growing marijuana, his consent might be implied from the circumstances even without knowledge." Id. (quotations omitted). In other words, it was reasonable to find that "Gerald consented to whatever unknown illegal activity was occurring in the residence." Id. Although he was not charged with any crimes, 21 U.S.C. § 856(a)(2) makes it unlawful to "manage or control any place . . . as an owner . . . and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." The penalty for such offense is imprisonment of up to twenty years or a fine or up to $500,000, or both. 21 U.S.C. § 856(b). And the punishment for aiding and abetting an offense is the same as the offense itself. See 18 U.S.C. § 2(a).

The fact that Gerald Ostipow himself was not convicted of a crime in connection with the marijuana-growing operation does not automatically make the forfeiture grossly disproportional

16

to the underlying offense. See U.S. v. One Parcel of Property with Buildings . . ., 395 F.3d 1, 7 (1st Cir. 2004) (forfeiture of claimant's dwelling did not violate the Eighth Amendment where claimant failed to prove she had no knowledge of her live-in boyfriend's drug-related crimes, as "[t]he penalty for the crime from which this forfeiture action arises is high – up to life imprisonment and over four million dollars in fines"); U.S. v. Collado, 348 F.3d 323, 328 (2d Cir. 2003) (forfeiture of claimant's building did not violate the Excessive Fines Clause where claimant's son used the property to run a large-scale narcotics trafficking operation, despite claimant's (rejected) claim that she had no knowledge of her son's activities, where claimant's "conduct constituted a violation of 21 U.S.C. § 856(a)(2), which makes it illegal for a person to 'manage or control any building . . . as an owner . . . and knowingly and intentionally . . . make available for use  . . . the building . . . for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance'"); United States v. Six Negotiable Checks in Various Denominations . . ., 389 F. Supp. 2d 813, 825 (E.D. Mich. 2005) (rejecting claimants' arguments that the court should not consider potential penalties for crimes with which they could have been charged, as "the case law in the wake of Bajakajian . . . demonstrates that the Guidelines and statutory penalties are relevant to the proportionality inquiry in a civil forfeiture case even in the absence of criminal charges").

Here, Gerald was aware that 3551 E. Allan Road was being used for illegal activity, and he nonetheless permitted Steven Ostipow to use the property. Given the harm that the large-scale marijuana grow operation could cause to others, and the high penalties associated with such activity, the forfeiture was not "grossly disproportional" to the gravity of the offense. As such, there is no Eighth Amendment violation, and Federspiel is entitled to summary judgment.

    **v.  Count Six – Monell Claim**

17

Finally, Plaintiffs argue that "Defendant(s)' conduct, including those under the command and direction of [Federspiel] . . . failed to conform to requirement of protecting and adhering to the constitutional rights of Plaintiffs[.]" Compl. ¶ 69.

A Monell claim is brought against a municipality, not against an individual. Here, although the Office of Sheriff has been dismissed, Plaintiffs have named Federspiel as a defendant in both his individual capacity and his official capacity. "In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." Cady v. Arenac Cty., 574 F.3d 334, 342 (6th Cir. 2009) (quoting Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993)). As described supra, the Office of Sheriff is an agent of the county, and Plaintiffs' claim here is, therefore, against Saginaw County. See United Food & Commercial Workers Local 1099 v. City of Sidney, 364 F.3d 738, 752 (6th Cir. 2004) ("Appellants' remaining § 1983 claim is against O'Leary in his official capacity as Shelby County Sheriff, and, as the district court noted, this claim is really one against Shelby County itself.").

A municipality is liable under § 1983 "only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'caused' one of its employees to violate the plaintiff's constitutional rights." D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014) (quoting Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 692 (1978)) (alterations omitted).

Here, for the reasons discussed above, Sheriff Federspiel is immune from liability. There is some authority holding that such immunity necessarily forecloses any claim against the county. See Snyder v. United States, 590 F. App'x 505, 513 (6th Cir. 2014) ("Once qualified immunity has been established for the individual defendant, the municipality is also immune from suit."). There is also authority that appears to hold that where immunity of the individual officer is based

on lack of clearly established law, the local government may still be subject to liability. See Scott v. Clay County, 205 F.3d 867, 879 (6th Cir. 2000). However, Federspiel has not in fact committed any constitutional violation, and the county therefore cannot be held liable under any view of Monell liability. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point.") (emphasis in original). The Court further notes that liability under Monell requires that "the entity itself is a moving force behind the [constitutional] deprivation," Kentucky v. Graham, 473 U.S. 159, 166 (1985); Plaintiffs' allegations regarding the Sheriff's Department all concern Federspiel's conduct, which has been found non-actionable, rather than any separate "policy" of the County. See, e.g., Pls. Resp. at 7, PageID.5105 (describing how Federspiel took "particular interest [in] using civil asset forfeiture" and "sought to publicize that he's using civil asset money to fund his department"). This is insufficient to find liability for Saginaw County.

Accordingly, summary judgment on this claim is granted.

### vi. State Law Claims

Having determined that Plaintiffs' federal claims lack merit, the case does not retain a federal character. Accordingly, pursuant to 28 U.S.C. § 1367, the Court declines to extend supplemental jurisdiction over Plaintiffs' state-law claims, counts I and VII, and dismisses them without prejudice. Brown v. Cuyahoga Cnty., 517 F. App'x 431, 436 (6th Cir. 2013) ("28 U.S.C. § 1367 allows a district judge to decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it has original jurisdiction.") (ellipsis omitted).

### IV. CONCLUSION

For the reasons provided, Defendants' motion for summary judgment (Dkt. 97) is granted in part and denied in part as follows: (i) the motion is granted with prejudice as to Counts II through VI and (ii) denied without prejudice as to Counts I and VII, which counts are dismissed without prejudice. Plaintiffs' motion for order to name Kelly Suppes as Deputy Doe No. 1 (Dkt. 98) is denied.[4]

SO ORDERED.

Dated: July 16, 2018   s/Mark A. Goldsmith
    Detroit, Michigan    MARK A. GOLDSMITH
    United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 16, 2018.

    s/Karri Sandusky
    Case Manager

---

[4] Because this opinion dismisses all claims in this case, all other pending motions (Dkts. 83, 84, 89, 121, 124) are denied without prejudice.